CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 27 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CAROLYN S. EDDIE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 7:06CV00750 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | By: Hon. Glen E. Conrad |
| AUTO TRUCK TRANSPORT CORP., ) | United States District Judge |
| ) | |
| Defendant. ) | |

Plaintiff Carolyn S. Eddie brought this action against her former employer, Auto Truck Transportation Corporation, pursuant to 28 U.S.C. §§ 1331 and 1343. The matter is currently before the court on the defendant's motion for summary judgment. For the following reasons, the court will grant the defendant's motion for summary judgment.

## BACKGROUND

Carolyn S. Eddie filed a complaint in this court on December 21, 2006. In her complaint, she alleges that Auto Truck Transportation Corporation, her former employer, wrongfully terminated her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.

The plaintiff worked as a truck dispatcher from September 2002 until February 6, 2006. The plaintiff was a salaried employee who worked approximately 60 hours a week. In April of 2004, the plaintiff had a stroke, caused by malignant hypertension. As a result, the plaintiff was placed on medical leave for three months. The stroke caused the plaintiff to suffer loss of "visual acuity and physical equilibrium." Compl. ¶ 4. The plaintiff's physician also recommended that the plaintiff be restricted to a forty-hour workweek. The hourly restriction was removed in January of 2005.

In January of 2006, the plaintiff began experiencing symptoms similar to those she had before her stroke. The plaintiff was again limited to a forty-hour workweek, and she missed four days of work. On February 6, 2006, after the plaintiff returned to work, she was called in to speak with the manager of her terminal and an officer of the company. She was told that she was being terminated for misconduct, which had been observed two weeks earlier.

On about February 15, 2006, the plaintiff signed a letter of termination ("Severance Agreement"). The plaintiff was told that she needed to sign the letter in order to receive her severance pay.

On February 16, 2007, the defendant filed a motion to dismiss and motion for summary judgment, arguing that the plaintiff's complaint is precluded by the Severance Agreement she signed on February 15, 2006. The Severance Agreement stated that the plaintiff would release her employer from all claims, including those brought under the ADA. A hearing was held on April 10, 2007, and the court granted the parties additional time to submit written materials to the court. Supplemental materials have been submitted by both parties, and the plaintiff has since filed a motion to amend her complaint.

## STANDARD OF REVIEW

The case is before the court on the defendant's motion for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is appropriate "only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law ...." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (internal quotations omitted). For a party's evidence to raise a genuine issue of material fact to avoid

2

summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## DISCUSSION

The defendant claims that it is entitled to summary judgment because the plaintiff signed a Severance Agreement, releasing her employer from all claims, including those brought under the ADA. However, the plaintiff claims that the contract was not valid because it is overbroad, the contract is one of adhesion, and the plaintiff was not in an appropriate mental state to enter into the contract.

As both parties agree, the plaintiff entered into a Severance Agreement with the defendant on February 15, 2006, nine days after she was terminated. The agreement provides in part:

> In consideration of the foregoing benefits, which Employee acknowledges the Company is under no preexisting obligation to provide, and to the fullest extent permitted by law, the Employee, for itself, its spouse, heirs and assigns, agrees never to sue or grieve against the Company, its parent corporations, or its or their affiliates or subsidiaries, or its or their past, current or future officers, directors, agents, shareholders, Employees, employees, [sic] predecessors, successors or assigns (hereinafter collectively referred to as the "Releasees"). The Employee releases the Releasees of and from any and all claims, whether currently known or unknown, and whether brought by or on behalf of the Employee. This release includes, without limitation by enumeration, claims for back pay, front pay, personal injury, compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees (which claim is also hereby released by the Employee's attorneys, if any), and for future damages allegedly arising from the alleged continuation of the effects of any past action, omission or event. This release includes any and all suits, charges, liability and damages, in law or in equity (including, without limitation by enumeration, any complaints, claims and suits under the United States and Wisconsin Constitutions; 42 U.S.C. §§ 1981, 1981a, 1983, 1985, 1986 and 1988; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.; the Americans with Disabilities Act, 42

3

U.S.C. § 12101 et seq.; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq.; the Federal Family and Medical Leave Act, 29 U.S.C. §2601 et seq.; the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq.; Executive Order 11246, the Wisconsin Fair Employment Act § 111.31 et seq.; and any other law, ordinance or regulation prohibiting discrimination in employment or otherwise regulating the employment or Employee relationship). This release includes any and all matters in connection with, or based wholly or partially upon, without limitation by enumeration, acts of age or other discrimination, retaliation, suspension, discharge, promotion, demotion, transfer, harassment, libel, slander, infliction of emotional distress, interference with prospective business relationships, invasion of privacy, failure to interview, hire or appoint, terms and conditions of employment, breach of employment contract, wrongful discharge or constructive discharge allegedly committed against the Employee by the Releasees, or in any way arising directly or indirectly out of the Employee's employment with and termination from the Company, up to and including the date the Employee signs this Agreement.

See Def.'s Mot. for Summ. J., Ex. 1 ¶ 6.

The United States Court of Appeals for the Fourth Circuit has held that employees may waive the right to sue for ADA discrimination. O'Shea v. Commercial Credit Corp., 930 F.2d 358, 362 (4th Cir. 1991). To determine whether such a waiver is binding, the court will look to the state law of contracts.[1] Id. Under Virginia law, the elements of waiver are "knowledge of the facts basic to the exercise of the right and the intent to relinquish that right." Employers Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co., 200 S.E.2d 560, 562 (Va. 1973).

A.   The Terms of the Severance Agreement

Although both parties agree that the Severance Agreement contains a release that would encompass this suit, the plaintiff argues that the Severance Agreement is overbroad and should therefore not be enforced.

---

[1] O'Shea was abrogated in part by statute. O'Shea dealt specifically with ADEA, and subsequent changes to that law established more stringent requirements for waiving ADEA suits. 29 U.S.C. § 626(f). However, later decisions have applied the principles of O'Shea to waiver of other legal claims. See, e.g., Lewis v. Extended Stay Am., Inc., 454 F. Supp. 2d 453 (M.D.N.C. 2006).

4

In support, the plaintiff notes a number of specific problems with the agreement. First, the plaintiff claims that the agreement is overbroad because the language prevents the plaintiff from bringing a suit related to her employment "or otherwise." The portion of the agreement to which the plaintiff refers is not specifically identified, but it appears that the provision of concern states: "[t]his release includes any and all suits, charges, liability and damages, in law or in equity including ... [list of applicable regulations] and any other law, ordinance or regulation prohibiting discrimination in employment or otherwise regulating the employment or Employee relationship[]." Def.'s Mot. for Summ. J., Ex. 1 ¶ 6. The court concludes that, read in the context of this agreement, the provision is not overly broad because the phrase "or otherwise regulating the employment or Employee relationship" is limited to the employment context. The court further concludes that the language is not vague.

Likewise, the court finds that the plaintiff's reading of ¶ 6, that the defendant can never be sued regardless of when or where a claim arises, is overly expansive. The contract actually states that

> [t]his release includes any and all matters in connection with, or based wholly or partially upon, without limitation by enumeration, acts of age or other discrimination, retaliation, suspension, discharge, promotion, demotion, transfer, harassment, libel, slander, infliction of emotional distress, interference with prospective business relationships, invasion of privacy, failure to interview, hire or appoint, terms and conditions of employment, breach of employment contract, wrongful discharge or constructive discharge allegedly committed against the Employee by the Releasees, or in any way arising directly or indirectly out of the Employee's employment with and termination from the Company, up to and including the date the Employee signs this Agreement.

Def.'s Mot. for Summ. J., Ex. 1 ¶ 6. The provision clearly states that the release is limited to claims arising out of the plaintiff's employment, and only applies to claims arising on dates up to and including that of the plaintiff's signing on February 15, 2006. As a result of this finding, the

5

court concludes that the instant Severance Agreement is very similar, and perhaps narrower, than the agreement upheld by this court in <u>Addison v. American Electric Power</u>, No. 99-0070-R (W.D. Va. May 26, 1999).

Furthermore, the plaintiff contends that ¶ 4 of the Severance Agreement is overly broad, as it prohibits the plaintiff from having any contact with the company's employees. Analysis of this provision is irrelevant to the matters at issue in this case, however. The Severance Agreement specifically provides in ¶ 13 that "[s]hould any of the provisions of this Agreement be rendered invalid by a court ... it is agreed that this shall not in any way affect the enforceability of the other provisions of this Agreement which shall remain in full force and effect ...." Def.'s Mot. for Summ. J., Ex. 1 ¶ 13. Furthermore, Virginia courts have held that when a contract includes several subjects, valid provisions will be upheld even if some provisions are void, as long as the provisions are divisible. See <u>Alston Studios, Inc. v. Gress & Assocs.</u>, 492 F.2d 279, 285 (4th Cir. 1974). Therefore, the validity of ¶ 4 has no bearing on ¶ 6, the main provision at issue in this case.

For the foregoing reasons, the court determines that the terms of the Severance Agreement between the parties are not overbroad or contrary to public policy.

B.  <u>The Execution of the Severance Agreement</u>

The plaintiff claims that the Severance Agreement is not valid because there was no "meeting of the minds" when the contract was executed. The plaintiff specifically claims that the contract was vague, and that the plaintiff was under duress and unfit to sign a legal agreement.

First, as discussed above, the court concludes that the terms of the contract were not vague. Therefore, the contract will be valid unless the plaintiff can show that she was under duress or did not have sufficient mental capacity to execute the contract.

6

The defendant bears the burden of proving to the court that a release has been executed; the plaintiff has the burden of proof to demonstrate that the release was invalid. Freedlander, Inc. v. NCNB Nat'l Bank of N.C., 706 F. Supp. 1211, 1215 (E.D. Va. 1988). The plaintiff must demonstrate that the release is invalid by "clear, cogent, and convincing evidence." Id. (citing standard for duress). See also Drewry v. Drewry, 383 S.E.2d 12, 14 (Va. App. 1989) (applying the clear and convincing standard to the issue of mental capacity to contract). Therefore, even though state of mind is at issue in the motion for summary judgment, "[t]he movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson, 477 U.S. at 256.

1. Duress

The first claim that the plaintiff raises is that she was under duress at the time that the contract was signed. A defense of duress is founded on the assertion that any "apparent consent" is unreal because of force or fear caused by threats. Freedlander, 706 F. Supp. at 1216. The plaintiff has presented little or no evidence in support of this contention, but it appears as if the plaintiff's argument is essentially one of economic duress. This defense has been extremely limited by Virginia courts. For example, the Supreme Court of Virginia has held that "[a] contract reluctantly entered into by one badly in need of money without force or intimidation and with full knowledge of the facts is not a contract executed under duress." Id. (citing Seward v. Am. Hardware Co., 171 S.E. 650, 662 (Va. 1933)). See also Cary v. Harris, 91 S.E. 166 (Va. 1917) ("a contract of compromise, entered into with full knowledge of all the facts, cannot be set aside on the ground of duress when the other party has not been guilty of any unlawful act"). These principles find further support in rulings of federal courts, which have addressed severance

7

agreements and concluded that, although a plaintiff might feel "some economic pressure to accept the attractive severance package and settle any claims he might have against [his employer,] this pressure does not rise to the level of economic duress." Adams v. Philip Morris, 67 F.3d 580, 583 (6th Cir. 1995). See also Lewis v. Extended Stay Am., Inc., 454 F. Supp. 2d 453, 458 (M.D.N.C. 2006). Based on these principles, and the lack of evidence adduced by the plaintiff on the issue of duress, the court concludes that the plaintiff has not produced evidence that would support a jury verdict that the Severance Agreement was signed under duress.

    2.    Mental Condition

Paul Kortman, the Director of Human Resources of the company that provides administrative services to the defendant, wrote in a sworn affidavit about the circumstances surrounding the signing of the Severance Agreement. Kortman said that he spoke with the plaintiff on February 6, 2006, and explained the terms of the Severance Agreement to her. See Def.'s Reply Mem. in Supp. of Mot. to Dismiss, Ex. B. Specifically, Kortman said that he explained that the plaintiff had twenty-one days to review the agreement, and seven days after the agreement to revoke her decision. Id. He also told the plaintiff to read the document carefully, and that she could have an attorney review the Severance Agreement before she signed it. Id. These statements were contradicted by a declaration of the plaintiff, submitted as part of the plaintiff's amended complaint, which stated that the terms of the Severance Agreement were not explained to her and she was not told to read the document carefully or consult an attorney.[2] Pl.'s Amd. Compl., Ex. E.

---

[2]For a discussion of the timeliness of the plaintiff's motion to amend her complaint, see infra.

8

The plaintiff signed the agreement on February 15, 2006, nine days after she received the Severance Agreement. At that time, the plaintiff had not submitted information to her employer that she had any mental limitations. See Def.'s Reply Mem. in Supp. of Mot. to Dismiss, Ex. B; see also id., Attach. to Ex. B (doctor's notes to employer concerning the plaintiff's limitations).

Although the plaintiff has submitted a letter from her doctor, regarding the plaintiff's mental state, with her memorandum in opposition to the defendant's motion to dismiss, the court notes that the letter cannot be considered as evidence pursuant to Federal Rule of Civil Procedure 56 (e). Fed. R. Civ. P. 56(e) (stating that when a motion for summary judgment is made, supported by affidavits setting forth facts and that the affiant is competent, the response must set forth specific facts as supported by affidavits or as otherwise provided for in the rule). Furthermore, the letter submitted by the plaintiff is not clear as to exactly when the plaintiff was unable to enter into contracts due to her mental state.

A sworn declaration by the same physician, D. Daniel Bradley, later submitted as part of the plaintiff's amended complaint, contained slightly more specific facts as to the plaintiff's mental state. The declaration stated that the plaintiff was being treated by the physician for anxiety and depression since the fall of 2005. Pl.'s Am. Compl., Ex. F. The physician recommended that the plaintiff should be excused from work from January 31, 2006 until February 5, 2006. Id. Bradley then stated "[i]t is my belief as a medical doctor familiar with treating Ms. Carolyn S. Eddie that she was not in any mental state from the time of her termination on February 6, 2006 until February 15, 2006, to enter into any contracts or sign any legal forms." Id.

The court recognizes that there is some dispute over whether this additional declaration and the plaintiff's amended complaint should be considered by the court. A party may amend its

9

pleading by leave of court, which shall be freely given. Fed. R. Civ. P. 15(a). Generally, absent delay or prejudice, bad faith, failure to cure, or futility, leave to amend should be permitted. See Foman v. Davis, 371 U.S. 178, 182 (1962). In fact, the Fourth Circuit has found that a lack of prejudice would generally result in the court granting leave to amend, and that delay alone is not sufficient justification to deny leave to amend. Ward Elec. Serv., Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987) (finding that an amendment that changed the plaintiff's theory of the case was not a sufficient reason for denial of leave to amend, "absent a showing of prejudice, bad faith, futility, or dilatoriness"). The court recognizes that the plaintiff's motion to amend was submitted on April 26, 2007, more than two weeks after the court held a hearing on the defendant's motion for summary judgment, and after the parties' time for submission of additional documents in regard to the motion for summary judgment had expired. However, the court concludes that even if the motion to amend the complaint with the accompanying documents was to be granted as timely, the defendant's motion to dismiss must still be granted.

For a number of reasons, the additional declaration submitted by the plaintiff has failed to create an issue of fact as to whether the plaintiff suffered from a mental incapacity when executing the contract. First, the declaration still fails to address the entire relevant time period. The declaration encompasses the period from February 6, 2006 until February 15, 2006, the date the plaintiff signed the agreement. However, by the terms of the Severance Agreement, the plaintiff would have had seven days <u>after</u> February 15, 2006, to revoke. Bradley's declaration therefore fails to show that the plaintiff was not competent at the time of the execution and during the time in which the plaintiff could have revoked the contract.

Furthermore, taking the evidence in the light most favorable to the plaintiff, the declaration does not present sufficient evidence of the plaintiff's mental state. Under Virginia

law, an adult who executes a contract is presumed to be mentally competent to enter into that contract. In re Wills, 126 B.R. 489, 497 (Bankr. E.D. Va. 1991) (citing Chesapeake & Ohio Ry. Co. v. Mosby, 24 S.E. 916, 916 (Va. 1896)). A person has sufficient mental capacity if she can "understand the nature of and the effect of the transaction to assent to its provisions," Price's Ex'r v. Barham, 137 S.E. 511, 512 (Va. 1927); a mere "weakness of mind" is not a "per se" ground for relief, Chesapeake, 24 S.E. at 916. See also Brown v. Resort Devs., 385 S.E.2d 575, 578 (Va. 1989). To determine whether a person is unable to enter into a contract, the Virginia courts inquire "whether ... his mind has been so affected as to render him incapable of understanding the nature and consequences of his acts, or, more exactly, whether his mental powers have become so far affected as to make him unable to understand the character of the transaction in question." Lohman v. Sherwood, 26 S.E.2d 74, 79-80 (Va. 1943).

Bradley's declaration does not include any information about the plaintiff's precise condition, other than stating that she suffered from "severe anxiety and depression," and stating that she was not in "any mental state" to enter into a contract. As a Virginia court has observed, a treating doctor's testimony that a party suffered from "severe mental depression" and was "totally incompetent to reason through any important legal document," did not show that an agreement should be set aside. Drewry, 383 S.E.2d at 18. The court based this conclusion on the principle that "the law will not invalidate a contract because it is ill-reasoned or ill-advised," noting that severe mental depression does not, by itself, render a person legally incompetent. Id.

The court concludes that, even if the motion to amend were granted and viewing all facts in the light most favorable to the plaintiff, the bare, conclusory statements supplied by Bradley are not sufficient to show that there was a material issue of fact as to the plaintiff's mental

11

capacity, and that she could not understand the nature and the effect of signing the Severance Agreement. Therefore, the court will grant the defendant's motion for summary judgment.

## CONCLUSION

For the reasons stated, the defendant's motion for summary judgment will be granted. First, the Severance Agreement was not vague and overbroad. Second, the plaintiff has not presented sufficient evidence that she was under duress or under a mental incapacity such that she could not execute the contract. Therefore, the Severance Agreement between the parties, releasing the defendant from claims such as those brought in this case, is valid and the motion for summary judgment must be granted.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 26th day of June, 2007.

_/s/ Jack Conrad_
United States District Judge